## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

_____

JOSEPH A. LA BARBERA D.C.
2719 Genessee Street
Utica, New York 13501

              Plaintiff,

     v.

I CARE FINANCIAL
975 Cobb Pl Blvd NW
Kennesaw, GA 30144

              Defendant.

_____

Civil Action No.

Jury Trial Demanded

### COMPLAINT

Plaintiff, Joseph A. La Barbera ("plaintiff") brings this action on behalf of himself and all others similarly situated, through his attorneys, and except as to those allegations pertaining to plaintiff or his attorneys, which allegations are based upon personal knowledge, alleges the following upon information and belief against defendant, I Care Financial ("defendant").

**PRELIMINARY STATEMENT**

1.      This case challenges defendant's practices of sending unsolicited facsimiles.

2.      The federal Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2006, 47 U.S.C. § 227 ("JFPA" or the "Act"), and the regulations promulgated under the Act, prohibits a person or entity from faxing or having an agent fax advertisements without the recipient's prior express invitation or permission.  The JFPA provides a private right of action and provides statutory damages of $500 per violation.  Upon information and belief, defendant has sent facsimile transmissions of unsolicited advertisements to plaintiff

and the Class in violation of the JFPA, including, but not limited to, the facsimile transmission of an unsolicited advertisement on February 5, 2015 ("the fax"), a true and correct copy of which is attached hereto as Exhibit "A" and made a part hereof.  The fax promotes the services of defendant.  Plaintiff avers that defendant has sent and continue to send unsolicited advertisements via facsimile transmission in violation of the JFPA.

3.      Unsolicited faxes damage the plaintiff and members of the class.  A junk fax recipient loses the use of its fax machine, paper, and in ink toner.  An unsolicited fax wastes the recipient's valuable time that would have been spent on something else.  A junk fax interrupts the recipient's privacy.  Unsolicited faxes prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message.

4.      On behalf of himself and all others similarly situated, plaintiff brings this case as a class action asserting claims against defendant under the JFPA.

5.      Plaintiff believes that this action is based upon a common nucleus of operative fact because the facsimile transmissions at issue were and are being done in the same or similar manner.  This action is based on the same legal theory, namely liability under the JFPA.  This action seeks relief expressly authorized by the JFPA. (I) injunctive relief enjoining defendant, their employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with them, from sending unsolicited advertisements in violation of the JFPA; and (ii) an award of statutory damages in the minimum amount of $500 for each violation of the JFPA, and to have such damages trebled, as provided by § 227(b)(3) of the Act.

**JURISDICTION AND VENUE**

6.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

7.      This Court has personal jurisdiction over defendant because defendant transacts business within this State, have made contracts within this state, and/or have committed tortious acts within this State and otherwise have sufficient minimum contacts with the State of New York.

8.      Plaintiff, Joseph A. La Barbera is a New York resident with his principal place of business in New York.

9.      On information and belief, defendant, I Care Financial is a Georgia corporation with its principal place of business located at975 Cobb Pl Blvd NW, Kennesaw, Georgia 30144.

10.     On or about February 5, 2015, defendant transmitted by telephone facsimile an advertisement.  See Exhibit "A".

11.     Defendant created or made Exhibit "A" which defendant knew or should have known is a good or product which defendant intended to and did in fact distribute to plaintiff and the other members of the class.

12.     Exhibit "A" is part of defendant's work or operations to market defendant's services which were performed by defendant and on behalf of defendant.  Therefore, Exhibit "A" constitutes material furnished in connection with defendant's work or operations.

13.     Plaintiff had not invited or given permission to defendant to send the faxes.

14.     On information and belief, defendant faxed the same and similar unsolicited facsimiles to plaintiff and other recipients without express permission or invitation.

3

15.     There is no reasonable means for plaintiff (or any other class member) to avoid receiving unauthorized faxes.  Fax machines are left on and ready to receive the urgent communications their owners desire to receive.

16.     Defendant's facsimiles did not display a proper opt-out notice as required by 47 C.F.R. § 64.1200.

**CLASS ACTION ALLEGATIONS**

17.     In accordance with F.R.Civ.P. 23(b)(1), (b)(2) and (b)(3), plaintiff brings this class action pursuant to the JFPA, on behalf of the following class of persons:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of defendant, (3) from whom defendant did not obtain prior express permission or invitation to send those faxes, and (4) did not display a proper opt-out notice.

Excluded from the Class are the defendant, their employees, agents and members of the Judiciary.  Plaintiff reserves the right to amend the class definition upon completion of class certification discovery.

18.     Class Size (F.R.Civ. P. 23(a)(1)): Plaintiff is informed and believes, and upon such information and belief avers, that the number of persons and entities of the Plaintiff Class is numerous and joinder of all members is impracticable.  Plaintiff is informed and believes, and upon such information and belief avers, that the number of class members is at least forty.

19.     Commonality (F.R.Civ.P. 23(a)(2)): Common questions of law and fact apply to the claims of all class members.  Common material questions of fact and law include, but are not limited to, the following:

4

a)      whether the defendant sent unsolicited fax advertisements;

b)      whether the defendant's faxes advertised the commercial availability of property, goods or services;

c)      the manner and method the defendant used to compile or obtain the list of fax numbers to which they sent Exhibit "A" and other unsolicited faxed advertisements;

d)      whether the defendant faxed advertisements without first obtaining the recipient's prior permission or invitation;

e)      whether the defendant sent the faxed advertisements knowingly;

f)      whether the defendant violated the provisions of 47 U.S.C. § 227 and the regulations promulgated thereunder;

g)      whether the faxes contain an "opt-out notice" that complies with the requirements of § (b)(1)(C)(iii) of the Act, and the regulations promulgated thereunder, and the effect of the failure to comply with such requirements;

h)      whether the defendant should be enjoined from faxing advertisements in the future;

i)      whether the plaintiff and the other members of the class are entitled to statutory damages; and

j)      whether the Court should award treble damages.

20.     Typicality (F.R.Civ.P. 23(a)(3)):  The plaintiff's claims are typical of the claims of all class members.  The plaintiff received faxes sent by or on behalf of the defendant advertising

goods and services of the defendant during the Class Period.  The plaintiff is making the same

claims and seeking the same relief for itself and all class members based upon the same federal

statute.  The defendant has acted the same or in a similar manner with respect to the plaintiff and

all the class members.

21.     Fair and Adequate Representation (F.R.Civ.P. 23(a)(4)): The plaintiff will fairly

and adequately represent and protect the interests of the class.  It is interested in this matter, has

no conflicts and has retained experienced class counsel to represent the class.

22.     Need for Consistent Standards and Practical Effect of Adjudication (F.R.Civ.P.

23(b)(1)): Class certification is appropriate because the prosecution of individual actions by class

members would: (a) create the risk of inconsistent adjudications that could establish

incompatible standards of conduct fo the defendant and/or (b) as a practical matter, adjudication

of the plaintiff's claims will be dispositive of the interests of class members who are not parties.

23.     Common Conduct (F.R.Civ.P.23(b)(2)): Class certification is also appropriate

because the defendant has acted and refused to act in the same or similar manner with respect to

all class members thereby making injunctive and declaratory relief appropriate.  The plaintiff

demands such relief as authorized by 47 U.S.C. § 227.

24.     Predominance and Superiority (F.R.Civ.P. 23(b)(3)): Common questions of law

and fact predominate over any questions affecting only individual members, and a class action is

superior to other methods for the fair and efficient adjudication of the controversy because:

   a)  proof of the claims of the plaintiff will also prove the claims of the class

      without the need for separate or individualized proceedings;

   b)  evidence regarding defenses of any exceptions to liability that the

6

defendant may assert and prove will come from the defendant's records and will not require individualized or separate inquiries or proceedings;

c)    the defendant have acted and are continuing to act pursuant to common policies or practices in the same or similar manner with respect to all class members;

d)    the amount likely to be recovered by individual class members does not support individual litigation.  A class action will permit a large number of relatively small claims involving virtually identical facts and legal issues to be resolved efficiently in one (1) proceeding based upon common proofs; and

e)    This case is inherently manageable as a class action in that:

(i)    the defendant identified persons or entities to receive the fax transmissions and it is believed that the defendant's computer and business records will enable the plaintiff to readily identify class members and establish liability and damages;

(ii)    liability and damages can be established for the plaintiff and the class with the same common proofs;

(iii)    statutory damages are provided for in the statute and are the same for all class members and can be calculated in the same or similar manner;

(iv)    a class action will result in an orderly and expeditious

7

administration of claims and it will foster economics of

time, effort and expense;

(v)      a class action will contribute to uniformity of decisions

concerning the defendant's practices; and

(vi)     as a practical matter, the claims of the class are likely to go

unaddressed absent class certification.

**Claim for Relief for Violation of the JFPA, 47 U.S.C. § 227, *et seq.***

25.     The JFPA makes unlawful for any person to "use any telephone facsimile

machine, computer or other device to send, to a telephone facsimile machine, an unsolicited

advertisement..." 47 U.S.C. § 227(b)(1)(C).

26.     The JFPA defines "unsolicited advertisement" as "any material advertising the

commercial availability or quality of any property, goods or services which is transmitted to any

person without that person's prior express invitation or permission in writing or otherwise." 47

U.S.C. § 227(a)(5).

27.     Opt-Out Notice Requirements.  The JFPA strengthened the prohibitions against

the sending of unsolicited advertisements by requiring, in §(b)(1)(C)(iii) of the Act, that senders

of faxed advertisements place a clear and conspicuous notice on the first page of the transmission

that contains the following among other things (hereinafter collectively the "Opt-Out Notice

Requirements"):

1.      a statement that the recipient is legally entitled to opt-out of receiving

future faxed advertisements - knowing that he or she has the legal right to

request an opt-out gives impetus for recipients to make such a request, if

desired;

2.   a statement that the sender must honor a recipient's opt-out request within 30 days and the sender's failure to do so is unlawful - thereby encouraging recipients to opt-out, if they did not want future faxes, by advising them that their opt-out requests will have legal "teeth";

3.   a statement advising the recipient that he or she may opt-out with respect to all of his or her facsimile telephone numbers and not just the ones that receive a faxed advertisements from the sender - thereby instructing a recipient on how to make a valid opt-out request for all of his or her fax machines;

The requirement of (1) above is incorporated from §(b)(D)(ii) of the Act. The requirement of (2) above is incorporated from §(b(D)(ii) of the Act and rules and regulations of the Federal Communications Commission (the "FCC") in ¶31 of its 2006 Report and Order (*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act, Junk Prevention Act ov 2005*, 21 F.C.C.R. 3787, 2006 WL 901720, which rules and regulations took effect on August 1, 2006). The requirements of (3) above are contained in §(b)(2)(E) of the Act and incorporated into the Opt-Out Notice requirements via §(b)(2)(D)(ii). Compliance with the Opt-Out Notice Requirements is neither difficult no costly. The Opt-Out Notice Requirements are important consumer protections bestowed by Congress upon the owners of fax machines giving them the right and means to stop unwanted faxed advertisements.

28.   2006 FCC Report and Order. The JFPA, in §(b)(2) of the Act, directed the FCC to implement regulations regarding the JFPA, including the JFPA's Opt-Out Notice

9

Requirements and the FCC did so in its 2006 Report and Order, which in addition provides among other things:

        A.     The definition of, and the requirements for, an established business relationship for purposes of the first of the three prongs of an exemption to liability under §(b)(1)(C)(I) of the Act and provides that the lack of an "established business relationship" precludes the ability to invoke the exemption contained in §(b)(1)(C) of the Act (*See* 2006 Report and Order ¶¶8-12 and 17-20);

        B.     The required means by which a recipient's facsimile telephone number must be obtained for purposes of the second of the three prongs of the exemption under §(b)(1)(C)(ii) of the Act and provides that the failure to comply with these requirements precludes the ability to invoke the exemption contained in §(b)(1)(C) of the Act (*See* 2006 Report and Order ¶¶13-16);

        C.     The things that must be done in order to comply with the Opt-Out Notice Requirements for the purposes of the third of the three prongs of the exemption under §(b)(1)(C)(iii) of the Act and provides that the failure to comply with these requirements precludes the ability to invoke the exemption contained in §(b)(1)(C) of the Act (*See* 2006 Report and Order ¶¶24-34);

        D.     The failure of a sender to comply with the Opt-Out Notice Requirements precludes the sender from claiming that a recipient gave "prior express permission or invitation" to receive the sender's fax (*See* Report and Order ¶48);

As a result thereof, a sender of a faxed advertisement who fails to comply with the Opt-Out Notice Requirements has, by definition, transmitted an unsolicited advertisement under the

JFPA.  This is because such a sender can neither claim that the recipients of the faxed advertisement gave "prior express permission or invitation" to receive the fax nor can the sender claim the exemption from liability contained in §(b)(C)(1) of the Act.

29.     The fax defendant sent on February 5, 2015 a facsimile transmission from telephone facsimile machines, computers, or other devices to the telephone facsimile machines of plaintiff and members of the plaintiff class.  The fax constituted an advertisement under the Act. Defendant failed to comply with the Opt-Out Requirements in connection with the Fax.  The Fax was transmitted to persons or entities without their prior express permission or invitation and/or Defendant are precluded from asserting any prior express permission or invitation because of the failure to comply with the Opt-Out Notice Requirements.  By virtue thereof, defendant violated the JFPA and the regulations promulgated thereunder by sending the Fax via facsimile transmission to plaintiff and members of the class.

30.     Defendant's Other Violations.  Plaintiff is informed and believes, and upon such information and belief avers, that during the period preceding four years of the filing of this Complaint and repeatedly thereafter, defendant have sent via facsimile transmission from telephone facsimile machines, computers, or other devices to telephone facsimile machines of members of the plaintiff class faxes that constitute advertisements under the JFPA that were transmitted to persons or entities without their prior express permission or invitation (and/or that defendant are precluded from asserting any prior express permission or invitation because of the failure to comply with the Opt-Out Notice Requirements in connection with such transmissions). By virtue thereof, defendant violated the JFPA and the regulations promulgated thereunder. Plaintiff is informed and believes, and upon such information and belief avers, that defendant are

11

continuing to send unsolicited advertisements via facsimile transmission in violation of the JFPA and the regulations promulgated thereunder, and absent intervention by this Court, will do so in the future.

31.     The TCPA/JFPA provides a private right of action to bring this action on behalf of plaintiff and the plaintiff class to redress defendant's violations of the Act and provides for statutory damages.  47 U.S.C. §227(b)(3).  The Act also provides that the injunctive relief is appropriate.  *Id.*

32.     The JFPA is a strict liability statute, so the defendant are liable to plaintiff and the other class members even if their actions were only negligent.

33.     The defendant knew or should have known that (a) the plaintiff and the other class members had not given express invitation or permission for the defendant or anybody else to fax advertisements about the defendant's goods or services; (b) defendant transmitted an advertisements; and (c) the faxes did not contain the required Opt-Out Notice.

34.     The defendant's actions caused damages to the plaintiff and the other class members.  Receiving the defendant's junk faxes caused the recipients to lose paper and toner consumed in the printing of the defendant's faxes.  Moreover, the defendant's faxes used the plaintiff's fax machine.  The defendant's faxes cost the plaintiff time, as the plaintiff and its employees wasted their time receiving, reviewing and routing the defendant's unauthorized faxes.  That time otherwise would have been spent on the plaintiff's business activities.  The defendant's faxes unlawfully interrupted the plaintiff's and other class members' privacy from the sending of defendant's advertisements occurred outside of defendant's premises.

WHEREFORE, plaintiff, Joseph A. La Barbera D.C. individually and on behalf of all

12

others similarly situated, demands judgment in his favor and against defendant, I Care Finanical

jointly and severally as follows:

        A.     That the Court adjudge and decree that the present case may be properly

maintained as a class action, appoint the plaintiff as a representative of the class and appoint the

plaintiff's counsel as counsel for the class;

        B.     That the Court award actual monetary loss from such violations or the sum

of five hundred dollars ($500.00) for each violation, whichever is greater;

        C.     That Court enjoin the defendant from additional violations; and

        D.     That the Court award pre-judgment interest, costs and such further relief as

the Court may deem just and proper.

Respectfully submitted,


Date:                   **/s/   Jeffrey L. Koenig, Esq**
                          Jeffrey L. Koenig, Esq.
                          **HECHT, KLEEGER & DAMASHEK, PC**
                          19 West 44th Street, Suite 1500
                          New York, New York 10036
                          212-490-5700
                          Email: koenig@lawyer1.com

                          Daniel C. Levin, Esquire
                          **LEVIN, FISHBEIN, SEDRAN & BERMAN**
                          510 Walnut Street, Suite 500
                          Philadelphia, PA 19106
                          215-592-1500
                          Email: DLevin@lfsblaw.com

Christopher Hayes, Esquire
**THE LAW OFFICE OF**
**CHRISTOPHER G. HAYES, ESQUIRE**
225 S. Church St.
West Chester, Pa 19382
610-431-9505
Email: chris@chayeslaw.com

Aaron Rihn, Esquire
**ROBERT PEIRCE & ASSOCIATES, P.C.**
2500 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219-1918
Telephone:      412-281-7229
Email:  arihn@peircelaw.com

David P. McLafferty
**MCLAFFERTY & ASSOCIATES, P.C.**
923 Fayette Street
Conshohocken, PA 19428
Phone: (610) 940-4000
Fax: (610) 940-4007
Email: dmclafferty@mclaffertylaw.com

*Attorneys for Plaintiffs*

**EXHIBIT 'A'**

# Why are you still turning patients away that don't qualify for Care Credit?

We **APPROVE** all your patients for financing with <u>No Credit Check</u>!

You can run any treatment through our program up to <u>20K</u>

## Fast Facts About *iCare Financial*

Featured In:

- *iCare Financial* is easy for your staff to use
- <u>Instant Patient Approval</u> - No Waiting
- No Credit Check
- No Proof of Employment Required or "Soft Credit Check"
- All Payments Guaranteed To Your Office - Non-Recourse
- Patients Receive 0% Interest
- *iCare Financial* Is The Only Company in the Industry That Will Approve All Your Patients
- No Cost To Run Patients Through *iCare* (You Run A $3,000 Case Through You Receive $3,000 Back)
- We do charge your <u>patient</u> a modest <u>flat administrative fee.</u> The administration fee is NOT compounded interest like Care Credit which can put your patient in harm's way.








Getting <u>Your Practice</u> Set Up is **Easy**!

Start saying YES to those patients with bad credit or needing financial help. Our program is simple for your patients to understand and easy for your staff to administer. We can have your office up and accepting new treatment plans in as little as 5 business days. So call 800-862-7908 to set up your consultation.

## Call *iCare Financial* Today

Please contact us directly at **1-800-862-7908** or visit us online at:
**www.iCareFinancialCorp.com**

To Opt-Out or unsubscribe please call (855) 595-3765 and enter your fax #.  Or you may fax us back with your fax # to request for removal to fax # 855-974-4106.